535 A.2d 669

# In re ESTATE OF Hugh L. KIRK

## Appeal of Richard KIRK.

Superior Court of Pennsylvania.

Argued Nov. 17, 1987.

Filed Jan. 8, 1988.

Robert Glessner, York, for appellant.

Frank S. Kelker, Assistant District Attorney, Rochester, for appellee.

Before WIEAND, MONTEMURO and POPOVICH, JJ.

WIEAND, Judge:

The novel issue in this appeal is whether a widow who has elected to "accept and acquiesce" in the provisions of her deceased husband's will and who has released "my share of any marital property and all other claims that I may have upon any of the property disposed of by the Will" is barred from inheriting as an heir when a partial intestacy occurs. The Orphans' Court held that the release was effective only with respect to property passing under the will and did not prevent the widow from inheriting as her deceased husband's heir. A nephew who, except for the widow, was the decedent's closest relative appealed. We affirm.

Hugh L. Kirk, the decedent, had been married to Bertha M. Kirk. No children were born of their marriage. However, Bertha had been married previously and had a daughter from her prior marriage. On or about November 11, 1982, Bertha's physical condition necessitated that she be admitted to the Beaver Valley Geriatric Center. On February 14, 1983, Hugh executed a will which expressly made no provision for Bertha but did contain a residuary clause in favor of Gloria Fitch, who was Bertha's daughter. On the same day on which this will was executed, Bertha signed a release of her marital rights so that her husband's property could pass upon his death to Bertha's daughter. This release provided as follows:

> I, BERTHA M. KIRK, of the County of Beaver and Commonwealth of Pennsylvania, wife of HUGH L. KIRK, the Testator named in the foregoing Will dated the 14th of February, 1983, hereby certify that I have been read the foregoing Will of my husband and fully understand that he disposes not only of his separate property but also of our marital property now owned or hereafter to be

acquired, if any, including my half of that property. Being fully satisfied with its provisions, I hereby assent to each and all of the provisions, conditions, gifts, devises, and legacies mentioned and contained in the foregoing Will, and I hereby waive and relinquish all right, claim, and demand as his wife and heir-at-law or otherwise to any of the benefits of the Estate of HUGH L. KIRK, and I hereby elect to accept and acquiesce in the provisions of the Will, waiving all claims to my share of any marital property and all other claims that I may have upon any of the property disposed of by the Will.

Unfortunately, matters of life and death proved to be unpredictable. Gloria Fitch died in 1984, predeceasing her mother and the testator. The testator died on May 16, 1986 without having changed his will. He was survived by his widow and by three nephews and a niece. The decedent's will was admitted to probate. Because Gloria Fitch was not the testator's child, however, the residuary gift lapsed by virtue of her prior death.[1] With respect to the residue of the testator's estate, therefore, a partial intestacy occurred. The executor determined that the residue of the estate should be distributed to the widow under the provisions of the Pennsylvania Decedents, Estate and Fiduciaries Act.[2] Richard Kirk, a nephew of the testator, filed exceptions which the court dismissed. From the order directing distribution to the widow, Kirk appealed. He argues that the surviving widow released all interest in her deceased husband's estate and, therefore, should be barred from receiving an intestate share in the estate. This requires that we interpret the language of the release.

In *Sparler v. Fireman's Fund Ins. Co. of Newark*, 360 Pa.Super. 597, 521 A.2d 433 (1987), this Court said:

1. Although Pennsylvania has an anti-lapse statute with respect to "a child or other issue of the testator," Gloria Fitch was not a child of the testator, and the residuary gift to her, therefore, was not protected by the statute. 20 Pa.C.S. § 2514(9).

2. The intestate share of a decedent's surviving spouse, where there is no surviving issue or parent of the decedent, is the entire intestate estate. 20 Pa.C.S. § 2102.

Written releases are construed according to the rules governing the construction of contracts generally. 76 C.J.S. Release § 38 (1952). A release normally covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. *Estate of Bodnar,* 472 Pa. 383, 387, 372 A.2d 746, 748 (1977); *In re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 456–457, 477 A.2d 527, 534 (1984); *Gateway Center Corp. v. Merriam,* 290 Pa.Super. 419, 425, 434 A.2d 823, 826 (1981). The intention of the parties to a written release is paramount, and in construing a release, a court should adopt an interpretation which, under all of the circumstances, "ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *General Mills, Inc. v. Snavely,* 203 Pa.Super. 162, 168, 199 A.2d 540, 543 (1964). See: *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co.,* 327 Pa.Super. 99, 107, 475 A.2d 117, 121 (1984). Although a court will not relieve the parties of the effect of an improvident contract, it must not allow a "rigid literalness" to be used to create an improvident contract for the parties contrary to their intent. *Mowry v. McWherter,* 365 Pa. 232, 238, 74 A.2d 154, 158 (1950). Thus, the words of a release "should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated." *Brill's Estate,* 337 Pa. 525, 527, 12 A.2d 50, 52 (1940). See: *Furtek v. West Deer Township,* 19 Pa.D. & C.2d 169, 178, *aff'd,* 191 Pa.Super. 405, 156 A.2d 581, 585 (1959).

*Id.,* 360 Pa.Superior Ct. at 601, 521 A.2d at 435.

When one examines the language of the release which the widow executed in the instant case, one cannot fail to observe the obvious intent to release the widow's claim against the property passing under the husband's will so that the husband could bypass his sick wife in favor of her

daughter. Thus, even if the widow should survive and even if she were then incompetent, the release would make it possible for a direct devise to the widow's daughter to take effect. Neither the testator nor his wife contemplated the possibility that Gloria would predecease her mother. Much less did they contemplate that she would predecease her stepfather so that the testamentary gift would lapse and an intestacy occur. Thus, the will made no provision for Gloria's early death, and the language of the release contained no language relinquishing the widow's intestate share of her husband's estate under those circumstances.

We conclude, therefore, that the language of the release was not intended to bar the widow from inheriting from her husband under the law of intestacy. This interpretation ascribes to the release the most reasonable, probable, and natural intent of the parties, bearing in mind the objects manifestly to be accomplished. The consideration for the release was the gift to the widow's daughter. To place upon it the broad interpretation urged by appellant would be to create for the parties an improvident contract which the parties clearly did not intend.

Affirmed.