IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Myers, individually, :
and as Executor of the Estate :
of Marlene R. Myers, deceased, :
                Petitioner :
                 :
            v. : No. 284 M.D. 2014
                 : Argued:  September 17, 2015
Pennsylvania Insurance Department, :
Medical Care Liability :
and Reduction of Error Fund, :
                Respondent :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: October 16, 2015


        Before this Court is a Motion for Judgment on the Pleadings[1] filed by

the Pennsylvania Insurance Department, Medical Care Liability and Reduction of

---

      [1] A motion for judgment on the pleadings is governed by Pa. R.A.P. 1532(b), which provides:

> (b) Summary relief. At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.

**(Footnote continued on next page…)**

Error Fund (MCARE Fund)[2] in opposition to a Petition for Review in the Nature of a Complaint filed in this Court's original jurisdiction[3] by Russell Myers (Myers) asking this Court to order the MCARE Fund to make payment to Myers in connection with an arbitration award.

In 2002, the General Assembly repealed the CAT fund[4] and enacted the Medical Care Availability and Reduction of Error Act (MCARE Act) in its place. The MCARE Act also established the MCARE Fund for the payment of claims which is administered by the Pennsylvania Department of Insurance.[5] The

---

**(continued…)**

> Note: Subdivision (b) authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and peremptory and summary judgment. However, such relief may be requested before the pleadings are closed where the right of the applicant is clear.

Pa. R.A.P. 1532(b).

[2] The MCARE Fund is a fund established within the State Treasury of the Commonwealth of Pennsylvania pursuant to the MCARE Act, Act of March 20, 2002, P.L. 154, 40 P.S. §1303.712, and administered by the Insurance Department of the Commonwealth of Pennsylvania. *See* Section 712 of the MCARE Act, 40 P.S. §1303.712.

[3] Pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa. C.S. §761(a)(1), this Court has original jurisdiction of civil actions against the Commonwealth.

[4] The CAT fund was more formally known as the Medical Professional Liability Catastrophe Loss Fund. The MCARE Fund assumed its money, rights, liabilities and obligations. *See* Section 712(b) of the MCARE Act, 40 P.S. §1303.712(b).

[5] Section 712(a) of the MCARE Act provides:

**(Footnote continued on next page…)**

stated purpose of the MCARE Act is to make medical professional insurance obtainable at an affordable and reasonable cost. Section 102(3) of the MCARE Act, 40 P.S. §1303.102(3). In order to be licensed to practice medicine in Pennsylvania, health care providers must maintain both private professional liability insurance and contribute to the MCARE Fund.[6]

The MCARE Fund serves primarily as "a statutory excess carrier that provides excess medical malpractice insurance coverage to the extent a health care provider's liability exceeds its basic coverage in effect at the time of an occurrence." *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association and Commonwealth of Pennsylvania, MCARE Fund*, 985 A.2d 678,

---

**(continued…)**

> There is hereby established within the State Treasury a special fund to be known as the [MCARE Fund]. Money in the fund shall be used to pay claims against participating health care providers for losses or damages awarded in medical professional liability actions against them in excess of the basic insurance coverage required by section 711(d) [of the MCARE Act, 40 P.S. §1303.711(d)], liabilities transferred in accordance with subsection (b) and for the administration of the fund.

40 P.S. §1303.712(a).

[6] Health care providers must obtain $500,000.00 per occurrence or claim of primary insurance coverage and participate, via the payment of annual assessments, in the MCARE Fund, which provides an additional $500,000.00 per occurrence or claim of coverage above their primary insurance. Sections 711(d)(2) and 712(c)(2)(1) of the MCARE Act, 40 P.S. §§1303.711(d)(2), 1303.712(c)(2)(i).

680 n. 2 (Pa. 2009) (citations omitted).[7] *See* Section 712(a) of the MCARE Act, 40 P.S. §1303.712(a).

Myers, as executor of the estate of decedent Marlene Myers, filed a medical malpractice lawsuit against Dr. Christopher Evans (Dr. Evans) and Memorial Hospital. The parties agreed to have all medical malpractice disputes, claims or controversies decided by binding arbitration and entered into an arbitration agreement. During the process of reaching the arbitration agreement, the parties exchanged draft agreements. Myers' attorney in the underlying medical malpractice action consistently objected to language in drafts of both the proposed arbitration agreement and the release that would expressly release the MCARE Fund.

The final arbitration agreement provided that the maximum amount Myers could recover against Dr. Evans and Memorial Hospital was $500,000.00 each, which were the limits of the applicable primary insurance policies. In the agreement, Myers agreed not to pursue any personal assets of Dr. Evans or Memorial Hospital, and that all such assets would be protected by limiting Myers' possible recovery to the amount of the maximum sum payable, that is, $500,000.00 from each defendant.

---

[7] The MCARE Fund is funded by surcharges and assessments imposed on the participating health care providers and the income from investments. Sections 712(d), 712(l) of the MCARE Act, 40 P.S. §1303.712(d), (l). A health care provider who fails to timely pay the surcharges and assessments may not participate in the coverage offered by the MCARE Fund. 31 Pa. Code §242.17; *Dellenbaugh v. Commonwealth Medical Professional Liability Catastrophe Loss Fund*, 756 A.2d 1172 (Pa. 2000).

The arbitrator found in favor of Myers and against Dr. Evans and entered an award of $1,503,504.99. Memorial Hospital was found not liable. Subsequently, the parties to the malpractice action negotiated language to be included in the release. Dr. Evans' counsel provided Myers with a proposed release, which would have expressly released the MCARE Fund, among various other entities. Myers' attorney objected, instead providing Dr. Evans' counsel with a release that excluded any express release of the MCARE Fund.

The cover letter sent with the draft of the release explained that Myers "never agreed to accord and satisfaction to release [MCARE Fund]." (Exhibit 3.) The parties executed this release pursuant to the arbitration agreement. The signed release states, in pertinent part:

> (1) [Myers], individually and as Executor of the Estate of Marlene R. Myers for and in consideration of the sum of $500,000.00 (Five Hundred Thousand Dollars only), which is the full extent of liability of [Dr. Evans], and Surgical Specialists of York, Ltd., under the law of Pennsylvania, does hereby *fully and completely release the said [Dr. Evans], Surgical Specialists of York, Ltd., and all basic coverage insurance carriers* including CPPRRG, Inc., *from all claims and damages arising, as a result of, arising from or in any way connected with any and all medical, professional health care services rendered by the said [Dr. Evans]*, and related to the claims on account of which legal action was instituted in the Court of Common Pleas of York County, Pennsylvania [....]

(R. Item. Exhibit D, Paragraphs 1, 2) (emphasis added.)

5

Under the release, Myers also agreed that upon receipt of payment, Dr. Evans would have satisfied any and all rights and obligations owed to Myers.[8] The MCARE Fund was not a party to the arbitration agreement or to the release. Dr. Evans paid Myers $500,000.00 of the award which released Dr. Evans from any and all claims and damages arising from this incident.

Myers then made a formal demand for payment for the maximum amount of $500,000.00 from the MCARE Fund for the remaining arbitration award in excess of the basic coverage $500,000.00 limit as provided for in Section 712 of the MCARE Act, 40 P.S. §1303.712.  In response, the Pennsylvania Insurance Department, on behalf of the MCARE Fund, stated that no payments are owed by the MCARE Fund to Myers, and that Section 714(e)[9] of the MCARE Act which

---

[8] Paragraph 2 of the release provides that Myers agrees to "comply with all Arbitration Agreements, specifically and including paragraphs 18, 19, 20, and 25." (R. Item. Exhibit D, Paragraph 2.)  Paragraph 18 of the agreement states:

> All payments owing pursuant to the Arbitrator's award will be made to [Myers] pursuant to the terms set forth herein and will be made payable to [Myers] and [Myers' attorney] only… [Myers] *acknowledges and agrees that Defendants will have satisfied any and all rights and obligations to them upon receipt of any payment*….

(R. Item. Exhibit C, Paragraph 18) (emphasis added).

[9] Section 714(e) of the MCARE Act states that:

> In the event that a basic coverage insurer or self-insured participating health care provider enters into a settlement with a claimant to the full extent of its liability as provided in this chapter, it may obtain a release from the claimant to the extent of its payment, which payment shall have no effect upon any claim against the fund or its duty to continue the defense of the claim.

**(Footnote continued on next page…)**

6

allows a claim to proceed if a settlement is reached to the extent of its liability is inapplicable because not only was the basic insurance carrier released to the extent of its coverage limits, Dr. Evans was released from all damages and there was no excess damages for it to pay.

Myers then filed a petition for review with this Court seeking declaratory judgment that he has a right to collect from the MCARE Fund the arbitration award to limit the MCARE Fund's excess coverage of $500,000.00. No assignment was made by Dr. Evans of any rights he had against the MCARE Fund, if any. Myers contends that the arbitration agreement and release do not affect the MCARE Fund's legal obligation to make payment for the excess coverage because the MCARE Fund was not a party to the arbitration agreement or the release and he is not precluded from pursuing an additional claim against the MCARE Fund for excess amounts recoverable based upon the arbitration award against Dr. Evans. He also alleges that the MCARE Fund is statutorily[10] obligated pursuant to Section 711(g)(2)[11] of the MCARE Act and contractually obligated to pay him in

---

**(continued…)**

40 P.S. §1303.714(e).

[10] Myers alleges that the arbitration agreement and release do not alter or impact the MCARE Fund's statutory obligation based on Section 714(e) of the MCARE Act.

[11] Section 711(g)(2) of the MCARE Act provides that "If a claim exceeds the limits of a participating health care provider's basic insurance coverage or self-insurance plan, the fund shall be responsible for payment of the claim against the participating health care provider up to the fund liability limits." 40 P.S. §1303.711(g)(2).

7

excess of the liability coverage of Dr. Evans' insurance. Finally Myers alleges that the MCARE Fund has a fiduciary duty to both health care providers and those who file medical malpractice claims against said health care providers, and is obligated to pay the $500,000.00 pursuant to Section 711(g)(2).[12]

After pleadings were closed, the MCARE Fund filed this motion for judgment on the pleadings. It argues that because the arbitration agreement limited Dr. Evans' liability to $500,000.00 "and no more," its statutory coverage is not triggered because Dr. Evans is not required to pay in excess of his primary insurance because the release absolves any of Dr. Evans' liability exceeding $500,000.00 and discontinues the action against him. In essence, the MCARE Fund is arguing that it is only liable if Dr. Evans has to pay more than his primary insurance coverage limits and because he has satisfied his obligation, it is not obligated to pay the excess MCARE Fund coverage.

The MCARE Fund acknowledges that although it has a duty under the MCARE Act to health care providers to provide excess coverage for liability exceeding $500,000.00, it does not have a separate or direct duty to pay a plaintiff damages "beyond the actual liability imposed upon the health care provider, or which is beyond the scope of the governing provisions of the [MCARE] Act." (Motion for Judgment on the Pleadings, Paragraph 22.) Moreover, it argues that

_____

[12] Myers also seeks a writ of mandamus requiring the MCARE Fund to comply with its statutory obligation to pay Myers from its fund as an excess insurer pursuant to Section 711(g)(2).

8

there is no private right of action for a patient to seek payment of excess coverage directly from the MCARE Fund.[13]

In opposition to the MCARE Fund's motion for judgment on the pleadings, Myers argues that the arbitration agreement and the release did not release the MCARE Fund as the MCARE Fund was not a party to either and could not be bound or released by either. Myers points to language in prior drafts of both the arbitration agreement and release that specifically released the MCARE Fund and was intentionally omitted from the final versions of the documents during the course of negotiations indicating that the contracting parties did not intend to absolve the MCARE Fund's liability in the matter. Moreover, the release merely released Dr. Evans' personal assets and primary insurance, neither of which includes the MCARE Fund. Myers further contends that a motion for judgment on the pleadings should not be granted because the arbitration agreement and release are ambiguous, thereby requiring the admission of extrinsic evidence to reveal the intent of the parties with respect to the arbitration agreement and release.

An "[a]rbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists." *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa. Super. 1997) (citations omitted). Under Pennsylvania law, a release is also a contract and must

---

[13] Finally, the MCARE Fund argues that Myers filed the petition for review more than two years after decedent's death, after discontinuing the underlying action, thereby filing a new cause of action after the statute of limitations has expired. It did not brief this issue in its motion for judgment on the pleadings.

be interpreted in accordance with the rules of contract construction.  *See Evans v. Marks*, 218 A.2d 802, 804-05 (Pa. 1966); *see also Davis ex rel. Davis v. Government Employees Insurance Company*, 775 A.2d 871, 875 (Pa. Super. 2001). The foremost consideration in construing a release is the intent of the parties. *Bickings v. Bethlehem Lukens Plate*, 82 F.Supp.2d 402, 405 (E.D. Pa. 2000); *Flatley v. Penman*, 632 A.2d 1342, 1344 (Pa. Super. 1993).  In determining the intent of the parties to a contract, courts must first look at the express language of the contract and then at the circumstances surrounding the execution of the release. *Bickings*, 82 F.Supp.2d at 405.  The effect of a release must be determined from the ordinary meaning of its language.  *Wolbach v. Fay*, 412 A.2d 487, 488 (Pa. 1980).  If the language of the release is clear, the court looks no further, even if the language is broad or general and no matter how "improvident" the agreement may later prove to be for one of the parties.  *Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. Super. 1995).

We agree that the arbitration agreement and the release between Dr. Evans and Myers did not specifically release the MCARE Fund and it was clear that it was not their intent to do so.  However, it is clear that as a result of the arbitration agreement and the release that Dr. Evans was "fully and completely" released from any and all liability to Myers and "all basic coverage insurance carriers" from any future liability.

By "fully and completely" releasing Dr. Evans after he paid Myers his $500,000.00 award, Myers also released the MCARE Fund from liability as the MCARE Fund is only obligated to "pay claims against [Dr. Evans] for losses or

10

damages awarded in medical professional liability actions against [him] *in excess* of the basic insurance coverage." 40 P.S. §1303.712(a) (emphasis added). Pursuant to Section 711(g)(2) of the MCARE Act, the MCARE Fund is responsible for paying a "claim against the participating health care provider up to the fund liability limits" if the "claim *exceeds the limits* of a participating health care provider's basic insurance coverage or self-insurance plan." 40 P.S. §1303.711(g)(2) (emphasis added). Per the arbitration agreement, "[t]he maximum amount recoverable" from Dr. Evans was $500,000.00, which he paid in full. (R. Item. Exhibit C, Paragraph 16.) Dr. Evans was then released from his liability through a general release. As the MCARE Fund is only responsible for paying in excess of the maximum amount recoverable from Dr. Evans, the MCARE Fund was relieved of paying excess coverage once Dr. Evans was released from all liability above his basic insurance limits.[14]

Accordingly, the MCARE Fund's motion for judgment on the pleadings is granted and Myers' petition for review is dismissed.

_____
DAN PELLEGRINI, President Judge

_____

[14] Based upon our disposition of this claim, we will not address the other issues raised in this appeal.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Myers, individually,   :
And as Executor of the Estate   :
of Marlene R. Myers, deceased,   :
                Petitioner   :
   :
           v.          : No. 284 M.D. 2014
   :
Pennsylvania Insurance Department,   :
Medical Care Liability   :
and Reduction of Error Fund,   :
            Respondent   :

# **O R D E R**

AND NOW, this 16th day of October, 2015, the Pennsylvania Insurance Department, Medical Care Liability and Reduction of Error Fund's Motion for Judgment on the Pleadings is granted and Russell Myers' Petition for Review is dismissed.

_____
DAN PELLEGRINI, President Judge